FREDERICKA HOMBERG WICKER, Judge.
|Jn this criminal proceeding, defendant/appellant, Andrew E. Horne, appeals his convictions and sentences. A 12-per-son jury found Mr. Horne guilty as charged of two-counts of the four-count bill of information: armed robbery and felon in possession of a firearm. The trial judge imposed respective 30-year and 10-year concurrent sentences. Thereafter, the trial judge found that Mr. Horne was a third-time felony offender and vacated the armed robbery sentence. The trial judge then imposed a 66-year concurrent habitual offender sentence. On appeal, Mr. Horne argues that his 66-year sentence is constitutionally excessive. For the reasons that follow, we affirm and remand with instructions to correct the minute entries/commitments.
Procedural History
The state filed a four-count bill of information with all offenses allegedly having occurred on July 16, 2008. The first count charged Mr. Horne with armed Rrobbery with a firearm in violation of La.R.S. 14:64 and La.R.S. 14:64.3. The bill alleged that Mr. Horne robbed Geraldine Winslow and/or Hancock Bank (count one). The second count charged Mr. Horne with attempted second degree murder of Gary Soileau, in violation of La.R.S. 14:27 and La.R.S. 14:30.1 (count two). The third count charged Mr. Horne with possession of stolen property valued at over $500 (a Chevrolet Tahoe belonging to Geraldine Alexander, in violation of La.R.S. 14:69 *565 (count three). The fourth count charged Mr. Horne with possession of a firearm by a convicted felon in violation of La.R.S. 14:95.1 (count four).[1]
Thereafter on the date of trial, March 9, 2010, the state amended the armed robbery count (count one) of the bill of information taking out the reference to La.R.S. 14:64.3 and adding “AND/OR LATOYA LEWIS” as a victim. Two days later, a 12-person jury found Mr. Horne guilty as charged of armed robbery and possession of a firearm by a convicted felon (counts one and four), and not guilty as to attempted second degree murder and possession of stolen property valued at over $500 (counts two and three). On March 24, 2010, the trial judge sentenced Mr. Horne to 30 years imprisonment with the Department of Corrections to be served without benefit of parole, probation, or suspension of sentence for armed robbery (count one) and 10 years imprisonment with the Department of Corrections to be served without benefit of parole, probation, or suspension of sentence for possession of a firearm by a convicted felon (count four). The sentences were ordered to run concurrently with each other.
Also, on that date with Mr. Horne present and represented by counsel, the state informed the court that it was filing a habitual offender bill of information as to the armed robbery conviction (count one). The bill, which was filed that day, alleged that Mr. Horne was a third felony offender. Defense counsel stated that he Previewed his copy of the bill. Counsel informed the court that he would waive the reading of the bill, enter a plea of “not guilty,” and requested a hearing date. Later, defense counsel filed a request for discovery and objections to the bill.
The matter was heard on April 28, 2010. Mr. Horne did not testify. After considering the evidence, the trial judge found Mr. Horne to be a third felony offender. About a month later, the trial judge vacated Mr. Horne’s original armed robbery sentence and imposed an enhanced sentence of 66 years imprisonment with the Department of Corrections. After recognizing that the armed robbery conviction was on count one, the trial judge ordered the sentence on count one to run concurrent with “all of the other sentences.” This timely appeal followed.
Facts
At approximately 10:00 AM on July 16, 2008, the Hancock Bank at 4041 Williams Boulevard in Kenner, Jefferson Parish, was robbed by two men: a gunman and an accomplice who retrieved the money. The gunman wore a bandana that covered most of his face. At trial, two bank eyewitnesses identified Mr. Horne as one of the robbers. They testified that the gunman threatened to kill them if they moved. Mr. Horne gave a statement to the police admitting he robbed the bank.
One of the eyewitnesses, Latoya Lewis, who was working on the day of the robbery as the drive-up teller, had close eye contact with the gunman. She identified Mr. Horne as the gunman by his eyes. Ms. Lewis testified that she previously identified Mr. Horne shortly after the robbery by his hair, tattoos, and shorts. Ms. Lewis stated that the gunman had distinctive features: twisted hair and visible tattoos that showed through his white shirt. At trial, the state asked Mr. Horne to show his chest. After that, Ms. Lewis stated that these were the tattoos she was referring to.
*566 | ¿Another eyewitness, Daniel Drolla, was the sole customer inside the bank during the robbery. After the incident, he spoke with the police and described the robbers. Shortly after the incident, he identified both of the robbers. He recognized the shorts that the gunman was wearing during the robbery. He stated that he had taken a good look at the gunman in the bank. At trial, he identified Mr. Horne as the gunman.
Another bank teller witness, Geraldine Winslow, did not identify Mr. Horne as the gunman. Similarly, Jennifer Snowden, the on-duty manager of the bank, who was inside of her office at the time of the robbery, testified that she did not get a good look at the gunman.
Ms. Winslow testified to events that occurred just before and during the robbery. Before the robbery, she had received a large deposit of approximately $25,000. She stood at the end of the counter, counting the money and “banding it.”[2] After she counted the money, she put it next to her keyboard. She then heard a loud noise and observed feet on the counter in front of her face. She screamed and jumped back to avoid being knocked down.
Ms. Winslow stated that the robber/non-gunman then took the money on the counter that she had banded and he placed it on the side. The subject then jumped to the floor, combed the drawers, and took money from her drawer. He tried to get back over the counter, but stumbled and hit the lamp. Money fell on the floor. The robber/non-gunman went to the floor to pick up the money that was dropped. Ms. Winslow testified she was scared, and feared for her life.
After the robbery, an eyewitness observed the two men flee the scene in a dark gray/black Tahoe SUV. The bank customer witness, Gary Soileau, who had previously been in law enforcement, was at the drive-through window and |Bwitnessed the robbery. He called 9-1-1 and moved his truck forward. Upon doing so, he observed another subject, who was wearing a white shirt and long shorts, in the parking lot standing by an SUV. After Mr. Soileau made eye contact with him, the subject began blowing the horn.
Mr. Soileau was on the phone with 9-1-1 and saw the SUV pull out of the driveway. He observed red smoke coming out of the passenger window, which indicated to him a “dye pack” had exploded in the vehicle. He followed the SUV in his truck. He explained that the suspect in the passenger seat, who was wearing a white shirt and long, dark shorts, was sticking his body and head out of the window. The subjects knew that Mr. Soileau was following them. Suddenly Mr. Soileau heard a bullet fly past his vehicle. He believed that they were shooting at him and he decided to slow down. He then observed the SUV crash into a cab. Mr. Soileau told the dispatcher that the subjects left the SUV and were running. Mr. Soileau went to the SUV and noticed large amounts of currency inside. He later identified both subjects and told the police which one was the shooter. At trial, Mr. Soileau identified Mr. Horne as the subject that was outside honking the horn and as the passenger in the SUV.
Ralph Hardy, who lived near the crash, walked down the steps of his porch into his front yard to see if he could be of assistance. He saw two vehicles involved in the accident. He also noticed two black males “kind of trotting” towards him. He heard police sirens as well. As he walked towards the accident, one of the males pulled *567 a gun on him and put the gun in his face. He told Mr. Hardy to “Back the F up or I’m going to blow your f — ing head off.” Mr. Hardy was afraid and backed away. The male continued down the street, cutting between houses. Mr. Hardy went inside his house. He said this male wore a white t-shirt. He was shown a gun at trial and recognized it as being the same type of gun that 17was put in his face. He also rode with the police to another location and recognized Mr. Horne as the one that pulled a gun on him. He identified Mr. Horne in court. At trial, he was shown a white shirt, a cap, and long shorts. He believed that these were consistent with what Mr. Horne was wearing at the time.
Officer John Cusimano of the Kenner Police Department responded to the investigation and was directed to a nearby shed where a black male hid. The subject, Mr. Horne, was handcuffed, advised of his Miranda [3] rights, and taken out of the shed and brought to Officer James Virgil, also of the Kenner Police Department. Officer Virgil stated that Mr. Horne understood his rights. The officer denied using any force, coercion or intimidation. Mr. Horne was also not promised anything. Mr. Horne advised Officer Virgil where the gun and money could be located inside the shed.[4] Mr. Horne told Officer Virgil he could do what he wanted with the money. Officer Cusimano returned to the shed. He found a weapon where Mr. Horne said it would be inside the shed. There was a live round in the gun’s chamber. The dark gray/black Tahoe was processed and currency was found in it that was stained from the dye. Currency was also located in the street outside of the bank.
Detective Jeff Adams of the Kenner Police Department testified that at the police station, Mr. Horne gave an oral statement to him.[5] He explained that Mr. Horne was advised of his Miranda rights by an Advice of Rights Form and indicated he understood his rights. He was not forced, coerced, intimidated, or promised anything. Mr. Horne said he was “down on his luck” and did not have a place to stay. An individual threatened to kill him and he obtained a handgun from his friend. He said he went to New Orleans and “hooked up” with Timothy | ¡/Timmons. He said that he and Mr. Timmons planned the bank robbery. After they fled, they noticed that a vehicle was following them. Mr. Horne admitted that he pointed a gun out of the window on the passenger side and fired two shots to scare the person off. He said he was not aiming at him. He said their vehicle struck a cab and they both got out on foot. He agreed that he pointed a gun at someone who was walking towards them and told that person to back off before hiding in a shed, where he was apprehended. During his statement, Mr. Horne indicated that he assumed the SUV belonged to Mr. Timmons.
At trial, the state introduced evidence of Mr. Horne’s prior conviction of simple burglary of an inhabited dwelling, La.R.S. 14:62.2.
Aischa Prudhomme of the Jefferson Parish Sheriffs Office crime lab, an expert in the field of latent fingerprint analysis, took Mr. Horne’s fingerprints and compared his fingerprint card to certified court documents showing Mr. Horne’s guilty plea conviction to La.R.S. 14:62.2. *568 She stated that there were no differences in these fingerprints.
Also at trial, the state elicited testimony from Giselle Alexander that on or about July 15, 2008, she travelled to the New Orleans area in her 2005 dark gray Chevy Tahoe. She parked it in the hotel’s parking lot and then noticed it was gone the next morning. She denied giving anyone permission to take her car and said she did not know Mr. Horne.[6]
After hearing the evidence, the jury found Mr. Horne guilty as charged of armed robbery and possession of a firearm by a convicted felon but not guilty on the remaining counts.
| ^Habitual Offender Sentence
Mr. Horne argues that his 66-year habitual offender sentence is constitutionally excessive.
Before Mr. Horne was found to be a third felony offender, he was convicted of armed robbery, the underlying offense. The trial judge stated that he had considered the sentencing guidelines pursuant to La.C.Cr.P. art. 894.1. Mr. Horne was originally sentenced to 30 years imprisonment with the Department of Corrections to be served without benefit of parole, probation, or suspension of sentence. However, the trial judge vacated this sentence and sentenced Mr. Horne as a third felony offender to 66 years imprisonment with the Department of Corrections.
As a third felony offender, for an underlying felony conviction punishable by imprisonment for any term less than his natural life, Mr. Horne was subject to a sentence of not less than two-thirds of the longest term and not more than twice the longest term. See State v. Otero, 09-468, p. 9 (La.App. 5 Cir. 1/26/10), 31 So.3d 1125, 1131, writ denied, 10-0489 (La.9/24/10), 45 So.3d 1072. See also La. R.S. 15:529.1. The term of imprisonment for an armed robbery conviction is not less than 10 nor more than 99 years of imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La.R.S. 14:64(B). Therefore, as a third felony offender convicted of armed robbery, Mr. Horne faced a sentencing range between 66 and 198 years of imprisonment at hard labor. See Ote-ro, supra. Thus, Mr. Horne received the mandatory minimum sentence.
Mr. Horne presents two arguments. First, he urges for a downward departure from the mandatory minimum sentence, citing State v. Dorthey, 623 So.2d 1276 (La.1993). Second, he asserts that even a mandatory minimum sentence can be reviewed for constitutional excessiveness.
|10As for the first argument, the state contends that since Mr. Horne raises a Dorthey claim for the first time on appeal he has not preserved this argument for review.
Mr. Horne did not file a motion to reconsider and only objected to the sentence as being constitutionally excessive. The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence only for constitutional excessiveness. State v. Ragas, 07-3, p. 10 (La.App. 5 Cir. 5/15/07), 960 So.2d 266, 272, writ denied, 07-1440 (La.1/7/08), 973 So.2d 732, cert. denied, 555 U.S. 834, 129 S.Ct. 55, 172 L.Ed.2d 56 (2008) (citation omitted); see also La.C.Cr.P. art. 881.1.[7] Further, a *569 mandatory minimum sentence under the Habitual Offender Law may be reviewed for constitutional excessiveness. State v. Lindsey, 99-3256, 99-3302, p. 4 (La.10/17/00), 770 So.2d 339, 342, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001). And, a Dorthey claim is considered in this Court’s review for constitutional excessiveness. See State v. Dupre, 03-256, pp. 7-9 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153-54, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509.
Regarding constitutional excessiveness, the state argues that Mr. Horne failed to satisfy the burdens set forth in Dorthey and its progeny. And, the trial judge did not abuse his discretion when sentencing Mr. Horne to the minimum penalty for a third felony offender.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Wickem, 99-1261, p. 10 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839 (citations omitted). In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. See State v. Lobato, 603 So.2d 739, 751 (La.1992).
The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Berry, 08-151, p. 17 (La.App. 5 Cir. 6/19/08), 989 So.2d 120, 131, writ denied, 08-1660 (La.4/3/09), 6 So.3d 767 (citation omitted). In considering whether the sentencing court abused its discretion, the reviewing court should consider, 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Pearson, 07-332, pp. 15-16 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656 (citation omitted). A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Williams, 03-3514, p. 14 (La.12/13/04), 893 So.2d 7, 16, citing State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
On review, an appellate court does not determine whether another sentence might have been more appropriate, but whether the trial court abused its discretion. Id.
In State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993), the Louisiana Supreme Court specifically held that when a trial court determines the minimum sentence mandated by La.R.S. 15:529.1 makes no “measurable contribution to acceptable goals of punishment” or that the sentence amounts to nothing more than 11?,“the purposeful imposition of pain and suffering” and is “grossly out of proportion to the severity of the crime,” the trial judge must reduce the sentence to one that would not be constitutionally excessive.
It is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. *570 Mims, 00-1507, p. 6 (La.App. 5 Cir. 12/26/01), 806 So.2d 760, 765, writ denied, 02-0466 (La.2/7/03), 836 So.2d 88 citing State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 675. A court may only depart from the mandatory sentence if it finds clear and convincing evidence in the particular case before it that would rebut this presumption of constitutionality. In order to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, that is, because of unusual circumstances he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Mims, supra, citing State v. Lindsey, 99-3256 c/w 99-3302 (La.10/17/00), 770 So.2d 339, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001); Johnson, supra. Downward departures from the minimum sentence mandated by La.R.S. 15:529.1 should only occur in rare situations. Lindsey, supra at 99-3302 at 5, 770 So.2d at 342 (citation omitted).
On appeal, Mr. Horne suggests that he is exceptional because of his age, which would amount to him having a life sentence, and the nature of his predicate convictions, which he describes as nonviolent. However, this Court has held that a defendant’s age is insufficient justification for a downward departure. See State v. Lee, 09-37, p. 8 (La.App. 5 Cir. 5/12/09), 15 So.3d 229, 233-34. Further, under the Habitual Offender Law those third and fourth offenders who have a history of violent crime get longer sentences, while those who do not are allowed lesser | issentences. So while a defendant’s record of non-violent offenses may play a role in a sentencing judge’s determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive. Johnson, supra, 709 So.2d at 676.
This Court has previously affirmed 66-year sentences for third felony offenders with underlying convictions of armed robbery. See Otero, supra; State v. Johnson, 03-620, pp. 14-15 (La.App. 5 Cir. 10/28/03), 860 So.2d 180, 189-90, writ denied, 03-3171 (La.3/19/04), 869 So.2d 849.
In this case, as in State v. Thomas, 08-1171, p. 9 (La.App. 5 Cir. 4/28/09), 13 So.3d 595, 601, Mr. Horne failed to carry his burden of proof that the sentence imposed was excessive. Mr. Horne has not shown that he is exceptional because of unusual circumstances and that his sentence is not meaningfully tailored to his culpability as the offender, the gravity of the offense, and the circumstances of the case. Although Mr. Horne argues that no one was killed and that no one suffered lasting or permanent harm, Mr. Horne committed a violent offense of armed robbery when he robbed the bank, and then his fear-provoking actions continued after he left the scene. Mr. Horne was identified as the gunman, and his actions and expressed threats caused several people to fear for their lives during the robbery and in his attempt to escape. Mr. Horne put several peoples’ lives in danger and even admitted to discharging a weapon, and firing two shots at someone following him from the crime scene. Further, in his attempts to escape, the vehicle the robbers were in crashed into another vehicle. Mr. Horne continued with his threats in the yard of someone whose intentions were to assist with the collision. Mr. Horne received a minimum sentence of 66 years for his enhanced sentence, when he faced 99 years for the underlying crime. Accordingly, the trial judge did not abuse his discretion in sentencing.
*571 114Errors Patent
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
Upon review, we note six errors patent, four of which require corrective action.
The first error that does not require corrective action concerns the March 24, 2010 original sentencing minute entry/commitment. The entry reflects the sentences on the two counts: armed robbery and felon in possession of a firearm. However, the entry states: “Sentence to be served without benefit of parole, probation, or suspension of sentence.” (Emphasis added). The entry does not specify which sentence or sentences have the statutory restrictions. In contrast, the trial judge made clear in the sentencing transcript that both sentences were imposed with those statutory restrictions as required by the sentencing statutes. See La.R.S. 14:64 and 14:95.1. Since the benefits provisions of these statutes are self-operating under La. R.S. 15:301.1, it is not necessary to remand the case and order the trial court to correct the commitment to conform to the transcript. State v. Moses, 05-787 (La.App. 5 Cir. 5/9/06), 932 So.2d 701, 715, writ denied, 06-2171 (La.4/5/07), 954 So.2d 140.
The second error that does not require corrective action concerns the May 26, 2010 habitual offender sentence.
According to the habitual offender sentencing transcript, the trial court failed to impose the required statutory restrictions although the minute entry/commitment reflects that the sentence was imposed without benefit of probation or suspension of sentence. La.R.S. 15:529.1(G) requires that all habitual offender sentences be served without the benefit of probation or suspension of sentence. Further, any 11shabitual offender sentence imposed under La.R.S. 15:529.1 following the offender’s conviction for armed robbery must carry the parole disability provided by La. R.S. 14:64(B). State v. Bruins, 407 So.2d 685 (La.1981). Nevertheless, under La. R.S. 15:301.1 and State v. Williams, 001725 (La.11/28/01), 800 So.2d 790, a statute’s requirement that a defendant be sentenced without benefit of parole, probation or suspension of sentence is self-activating. Therefore, no corrective action regarding the restriction of benefits is necessary. See State v. Strattman, 08-674, pp. 9-10 (La.App. 5 Cir. 4/28/09), 13 So.3d 1129, 1134-35, writ denied, 09-1157 (La.1/22/10), 25 So.3d 130.
We now turn to those errors patent requiring corrective action.
First, despite the language in the minute entries/commitments, which show otherwise, the sentencing transcripts, which prevail,[8] do not reflect that Mr. Horne was advised of the prescriptive period for filing post-conviction relief as required by La. C.Cr.P. art. 930.8. In accord with State v. Davenport, 08-463, pp. 10-11 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451, writ denied, 09-0158 (La.10/16/09), 19 So.3d 473, we advise Mr. Horne by this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.
Second, La.R.S. 15:529.1 (D)(3) requires the trial court to vacate the previously imposed sentence prior to imposing a ha *572 bitual offender sentence. The May 26, 2010 habitual offender sentencing minute entry/commitment does not reflect that the trial judge vacated the original armed robbery sentence although the transcript shows that the trial judge did vacate the original sentence. By failing to state that the trial judge vacated the original sentence, the minute 11fientry/commitment creates confusion as to the terms of the defendant’s confinement. In order to avoid such confusion, the trial court is ordered to correct the sentencing commitment/minute entry to reflect that the trial judge vacated the original armed robbery sentence, as shown in the sentencing transcript.
Third, both the March 24, 2010 original sentencing minute entry/commitment and the May 26, 2010 habitual offender sentencing minute entry/commitment reflect that Mr. Horne was convicted of “CONVICTED FELON WITH A WEAPON.” More accurately, Mr. Horne was found guilty of “felon in possession of a firearm.” La.R.S. 14:95.1. We accordingly order the trial court to clarify the commitment/minute entry by applying the correct terminology-
Fourth, both the March 24, 2010 original sentencing minute entry/commitment and the May 26, 2010 habitual offender sentencing minute entry/commitment reflect that Mr. Horne was found not guilty of “RECEIVING STOLEN THINGS $100 + .” According to the record, Mr. Horne was found not guilty of “Illegal Possession of Stolen Things valued at $500 or more.” We accordingly order the trial court to clarify the commitment/minute entry by applying the correct terminology.
Conclusion
Accordingly, it is ordered that Mr. Horne’s convictions, habitual offender finding, and sentences are affirmed. We further order that this case be remanded to allow the trial court to amend the minute entries/commitments as directed above. We direct the clerk of court to transmit the original of the respective minute entries/commitments to the officer in charge of the institution to which Mr. Horne has been sentenced, La.C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-1024417 (La.9/15/06), 937 So.2d 846 (per curiam), and to the legal department, the Department of Public and Safety Corrections (DOC).

CONVICTIONS AND HABITUAL OFFENDER FINDING AFFIRMED; SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS

. Timothy E. Timmons was also charged in the first three counts of the bill of information. His trial, however, was severed and Mr. Timmons is not a party to this appeal.

. The bands had to be stamped and initialed. Ms. Latoya Lewis, another bank employee, identified Ms. Winslow’s initials in a "strap of 20s” at trial.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. At a pretrial hearing, the trial judge denied Mr. Horne’s motion to suppress the statements.

.See infra n. 4.

. It is noted that count three in the bill of information names the victim as “Geraldine” Alexander. (R., p. 23).

. According to La.C.Cr.P. art. 881.1(E), the "[f]ailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence *569 may be based, including a claim of excessive-n'ess, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.”

. State v. Lynch, 441 So.2d 732, 734 (La.1983) (The transcript prevails when there is a discrepancy between the commitment and the transcript.).