FREDERICKA HOMBERG WICKER, Judge.
12Defendant, Byron Ross, appeals his convictions for armed robbery with a firearm and attempted second-degree murder, claiming that the trial judge imposed unconstitutionally excessive sentences in light of defendant’s extensive history of mental illness and substance abuse issues. For the following reasons, we affirm defendant’s convictions and sentences.

STATEMENT OF THE CASE

On August 31, 2010, the Jefferson Parish District Attorney filed a bill of information charging defendant with attempted second-degree murder in violation of La. R.S. 14:27:30.1 and armed robbery while armed with a firearm in violation of La. R.S. 14:64 and 14:64:3.[1]
|sDefendant was arraigned and initially pled not guilty. On August 3, 2011, defendant was re-arraigned and pled not guilty and not guilty by reason of insanity. Following numerous hearings concerning defendant’s competency to stand trial and the issue of his sanity at the time of the offense, the transcript reflects that defendant amended his plea again to not guilty.[2] The matter proceeded to trial by jury and defendant was found guilty as charged. After a sentencing hearing, the trial judge sentenced defendant to ninety-nine years at hard labor for his armed robbery conviction, five years at hard labor for his use of a firearm during the commission of the armed robbery in violation of La. R.S. 14:63.1, and fifty years for his attempted second-degree murder conviction. Defendant filed a timely motion to reconsider his sentence, which the trial court denied. This timely appeal follows.

FACTUAL BACKGROUND

Mark Renouff testified that on June 19, 2010, he was working the evening shift as a tow truck driver for Moon’s Towing Yard in Jefferson Parish. At approximately 4:00 a.m., while unloading a totaled vehicle from his truck, Mr. Renouff observed an individual walking across the street toward him. Mr. Renouff testified that he commonly sees people walking on the street or sidewalk opposite the tow yard but that it is uncommon for individuals to walk on the same side of the street as the tow yard. After the man crossed to his side of the street, Mr. Renouff stopped working and continued to watch the man. Mr. Renouff testified that he could clearly see the man’s face as the man walked by; Mr. Renouff further |4noticed a bulge in the man’s shirt and described the shirt as a *330 black shirt with silver rhinestones that shined in the light.[3]
Mr. Renouff testified that he watched the man walk until he turned the nearest corner onto a side street. Mr. Renouff then went back to working. A couple of minutes later, Mr. Renouff heard someone behind him say, “[g]ive me your wallet.” After he gave the man his wallet, the man put a gun to Mr. Renouff s face and pulled the trigger, but the gun jammed. The man tried to unjam the gun, then again pointed it at Mr. Renouff and pulled the trigger — the gun jammed a second time. Mr. Renouff testified that he was “frozen like a statute [sic].” After he heard the trigger click a second time, Mr. Renouff ran. He testified, “I guess I came to my senses, realized he was trying to kill me and I took off running to get inside of our gate.” Mr. Renouff ran to the inside of the gate and screamed for the gate operator to call 9-1-1.
Mr. Renouff testified that he recognized the man who robbed him as the same man who walked past him minutes before; however, when the man returned, he had on a hooded sweatshirt and was holding a bandana. Mr. Renouff testified that he knew it was the same man because the hooded sweatshirt was not zipped completely and he recognized the black shirt with rhinestones shining. Further, Mr. Renouff testified that, although the man held a bandana up to cover his face, he dropped the bandana twice allowing Mr. Renouff to see his face. Pursuant to the police investigation, Mr. Renouff identified defendant in a photographic lineup as the man who robbed him. He again identified defendant at trial.
Detective David Canas with the Jefferson Parish Sheriffs Office testified that he prepared and presented Mr. Renouff with a photographic lineup to identify the suspect and that Mr. Renouff identified defendant as the individual who robbed |fihim. Detective Canas also interviewed defendant, who admitted being in the area that night but denied any involvement in the robbery.
Detective Gary Barteet with the Jefferson Parish Sheriffs Office testified that he participated in defendant’s arrest at the LaBella Motel in the 3300 block of Jefferson Highway and that, incident to defendant’s arrest, he recovered a loaded Ruger .45 caliber semi-automatic handgun.[4] The defense stipulated that defendant was in possession of that firearm on the date defendant was arrested at the LaBella Motel and for the two weeks preceding his arrest, including the date of the armed robbery and attempted murder of Mr. Re-nouff.
Colonel Timothy Scanlan with the Jefferson Parish Sheriffs Office testified as an expert in the field of firearms and tool mark examinations. He testified that the type of weapon in defendant’s possession tends to have malfunctioning issues, particularly when the firearm is not properly oiled. He further testified that the design of the firearm’s safety mechanism promotes potential misfires. Colonel Scanlan testified that, upon his examination of the firearm in defendant’s possession, he noticed the firearm needed to be oiled and had sluggish operation.

DISCUSSION

In his sole assignment of error, defendant claims that the sentences imposed are unconstitutionally excessive in light of the *331 evidence presented of his extensive history of mental illness and substance abuse issues.[5]
IfiThe state responds that the sentences are not unconstitutionally excessive in light of the gravity of the crime, the impact the crime has had on the victim, and defendant’s lack of remorse to the victim. The state further argues that, although the record reflects that defendant has psychological issues, the general consensus from the doctors who examined defendant was that defendant knew the distinction between right and wrong at the time he committed the offense.
At the sentencing hearing, the Victim Witness Assistant read into the record Mr. RenoufPs victim impact statement. Mr. Renouff stated that he continuously thinks about the armed robbery, even two years later, and is constantly fearful of his surroundings. He continues to work the night shift at Moon’s Towing and he and his family fear that he may be placed in a similar situation again, but that next time the perpetrator will be successful and that he will be killed. Mr. Renouff stated that he would be fearful, if defendant were released from prison, that defendant, if given the opportunity, would find Mr. Re-nouff and try to finish what he attempted on the night of the armed robbery.
Dr. Sarah Deland, accepted as a forensic psychiatry expert, testified for the defense that she has examined defendant on multiple occasions. She testified that defendant suffers from schizophrenia and has a family history of schizophrenia, with his father having been in the mental health system for more than fifteen years and his two brothers treated for other various mental illnesses. Dr. Deland further testified that she interviewed defendant’s mother to obtain defendant’s family history.[6] Defendant’s mother reported that defendant was “pretty much” living on the streets at the time of the offense and that he had been off of his medication for some time. Defendant’s mother also reported that defendant was physically [ 7abused as a child by his family and stated that she did not feel comfortable with defendant in her home but allowed him to sleep in an old car in her yard; on occasion, she would pay for a motel room for defendant.
Dr. Deland testified that defendant attended special education classes for behavioral issues as a child and that he had received psychiatric treatment off and on in some form since he was a teenager. Dr. Deland diagnosed defendant with *332 schizophrenia and substance abuse. She explained that defendant has been involuntarily confined in mental institutions multiple times for schizophrenic behavior.[7] She further explained that defendant responds well to medication but that he has a history of not taking his medication and turning to street drugs, which cause hallucinations and paranoid delusions. Dr. Deland reported that the medical records reflect that defendant had recurrent delusions that a roach was living inside of his head and affecting his thinking.
Following Dr. Deland’s testimony, the state introduced the entire record into evidence and argued that the sanity commission determined, and Dr. Deland did not disagree, that, at the time defendant committed the armed robbery of Mr. Renouff, he had the ability to distinguish between right and wrong. Defense counsel argued to the court that, although defendant potentially may have been able to distinguish between right and wrong at the time of the offense, he did not necessarily understand the ramifications of his actions. Defense counsel asked the trial court to consider defendant’s mental illness and history of physical abuse by family members prior to imposing defendant’s sentence.
| ^Following the testimony presented, the trial judge stated that he considered the victim’s statement and the continuous impact the crime has had on the victim. He further considered defendant’s mental illness, stating:
There’s no doubt the defendant is disturbed. The testimony of Dr. Deland certainly establishes a mental illness. However, it likewise establishes through her letter and report that with regard to the armed robbery, it was her opinion with reasonable medical certainty that while Mr. Ross was likely experiencing impaired thinking and reasoning, that it did not rise to the level to render him unable to distinguish between right and wrong. In fact, he knew what he was doing.
In sentencing defendant, the trial judge found that:
The testimony at the trial of this case established that in the course of robbing Mr. Renouff, the defendant pointed a handgun at the victim’s face at point blank range and pulled the trigger. Thankfully, the gun did not fire. As the victim stood frozen in fear, the defendant tried to unjam the gun and again raised the gun to the victim’s face and pull[ed] the trigger a second time. Again, thankfully, the gun did not fire. But for the gun’s malfunction, we would be dealing with a murder case.
After defendant waived sentencing delays, the trial judge sentenced defendant to ninety-nine years at hard labor for the armed robbery conviction in violation of La. R.S. 14:64; five years at hard labor for the use of a firearm during the armed robbery as mandated under La. R.S. 14:64.3; and fifty years for the attempted second-degree murder conviction in violation of La. R.S. 14:27:30.1. The trial judge ordered the sentences to be served consecutively and stated that a lesser sentence would deprecate the seriousness of defendant’s crime.
In this appeal, defendant first argues that the ninety-nine year statutory maximum sentence for his armed robbery conviction is unconstitutionally excessive. De *333 fendant further challenges the consecutive nature of his sentences, arguing that the trial judge should have ordered the sentences to be served concurrently.
| flThis Court has held that failure to file a motion to reconsider sentence or to state the specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for unconstitutional excessiveness. State v. Hunter, 10-552 (La.App. 5 Cir. 1/1/11), 59 So.3d 1270, 1272. Further, this Court has held that when the consecutive nature of sentences is not specifically raised in the trial court, the issue is not included in the review for unconstitutional excessiveness and the defendant is precluded from raising the issue on appeal. State v. Escobar-Rivera, 11-496 (La.App. 5 Cir. 1/24/12), 90 So.3d 1, 8, writ denied, 12-409 (La.5/25/12), 90 So.3d 411. Although the record in this case reflects that defendant orally objected to his sentences and filed a -written motion to reconsider the sentences, he failed to state any specific ground upon which the motion was based and did not object to the consecutive nature of his sentences at the trial court level. Accordingly, we find that defendant is limited to a bare review of his sentences for unconstitutional excessiveness.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Horne, 11-204 (La.App. 5 Cir. 2/14/12), 88 So.3d 562, 569, writ denied, 12-0556 (La.6/1/12), 90 So.3d 437; State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. The trial judge is afforded broad discretion in sentencing and a reviewing court may not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D); State v. Berry, 08-151 (La.App. 5 Cir. 6/19/08), 989 So.2d 120, 131, writ denied, 08-1660 (La.4/3/09), 6 So.3d 767; State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656.
110In reviewing a sentence for ex-cessiveness, an appellate court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992). Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. State v. Falkins, 04-250 (La.App. 5 Cir. 7/27/04), 880 So.2d 903, 911, writ denied, 04-2220 (La.1/14/05), 889 So.2d 266 and writ denied sub nom. State ex rel. Simms v. State, 04-2171 (La.5/20/05), 902 So.2d 1045.
 A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2785 (La.5/31/96), 674 So.2d 957, 958. On review, the issue is whether the trial judge abused his great discretion, not whether another sentence might have been more appropriate. State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d at 656; State v. Horne, 11-204 (La.App. 5 Cir. 2/14/12), 88 So.3d at 569.
Defendant was convicted of armed robbery with a firearm and attempted second-degree murder. Defendant’s conviction for armed robbery is punishable by imprisonment at hard labor for not less than ten years and not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. Additionally, the state sought a firearm enhancement under *334 La. R.S. 14:64.3, which provides for an additional mandatory five-year sentence at hard labor without benefit of parole, probation, or suspension of sentence to be served consecutively to the sentence imposed under the provisions of La. R.S. 14:64. Accordingly, as to his armed robbery with a firearm conviction, defendant faced a sentencing range of imprisonment at hard labor for not less than fifteen years and not more than one hundred and four years. As to his attempted second-degree 1n murder conviction, defendant faced a sentencing range of imprisonment at hard labor for not less than ten nor more than fifty years, without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:27(D)(l)(a); 14:30.1(B). Therefore, defendant’s sentences, although the maximum allowed under the law, fall within the applicable sentencing ranges.
 The imposition of a sentence, although within the statutory limits, may still violate a defendant’s constitutional right against excessive punishment. State v. Scie, 13-634 (La.App. 5 Cir. 1/15/14), 134 So.3d 9, 12. In considering whether the trial court abused its discretion in sentencing a defendant, a reviewing court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes by other courts. State v. Horne, 11-204 (La.App. 5 Cir. 2/14/12), 88 So.3d at 569.
Concerning the first factor, the nature of the crime, the Louisiana Supreme Court has recognized that “the crime of armed robbery ‘is a pernicious offense’ which ‘creates a great risk of emotional and physical harm to the victim, to witnesses, and, at times, even to the offender.’ ” State v. Celestine, 12-0241 (La.7/2/12), 92 So.3d 335, 337. The record in this case reflects that defendant attempted to shoot the unarmed victim directly in the face twice after stealing his wallet. The trial judge found that, had the gun not jammed, “we would be dealing with a murder case.” Further, the victim impact statement provided that Mr. Re-nouff suffers from anxiety as a result of the armed robbery. Mr. Renouff stated that the armed robbery has changed the way that he performs his work and that he and his family are worried that he will be robbed again, but that next time the perpetrator will be successful and kill him. Prior to the armed robbery, Mr. Renouff would not think twice of a stranger walking down the street while he worked. However, since the armed robbery, Mr. Renouff still works the night shift | 12and is continuously in fear of strangers that walk near the tow yard. Mr. Renouff further stated that he is fearful that defendant, if given the opportunity, would come back to the tow yard and kill him.
Second, regarding the nature and background of the offender, the record reflects that defendant clearly suffers from an extensive personal and family history of mental illness. Defendant was involuntarily committed to several mental institutions throughout his adult life for his schizophrenic behavior. His mother reported incidents of physical abuse in his childhood and his medical records indicate a recurring delusion that a cockroach lives inside of his brain and affects his thinking. However, the trial judge found that although defendant clearly suffered from a mental illness, the medical experts reported that, at the time of the offense, defendant was able to distinguish between right and wrong and, in fact, “knew what he was doing.” Further, although defendant asserts that he is a first-time offender, the record reveals that defendant does have a violent criminal history. The record reflects that defendant has multiple arrests in Jefferson and Orleans Parishes and has *335 pending charges in Orleans Parish for first-degree murder and attempted first-degree murder.
Finally, regarding sentences imposed by this and other courts, this Court has previously found that, “[a] review of the jurisprudence reveals that ninety-nine year sentences imposed upon defendants convicted of armed robbery have been previously upheld in many cases, including cases in which the victims were not physically injured. See State v. Dempsey, 02-1867 (La.App. 4 Cir. 4/2/03), 844 So.2d 1037; State v. Douglas, 389 So.2d 1263 (La.1980); State v. Williams, 482 So.2d 1090 (La.App. 3 Cir.1986); State v. James, 545 So.2d 560 (La.App. 4 Cir.1989), writ denied, 551 So.2d 618 (La.1989); State v. Carter, 570 So.2d 234 (La.App. 5 Cir.1990); and State v. Wilson, 452 So.2d 773 _[j(La.App. 4 Cir.1984)." State v. Falkins, 880 So.2d at 912.
Although a review of the jurisprudence lacks any factually similar case in which a defendant has been sentenced to the maximum fifty-year sentence for attempted second-degree murder and the victim is not physically injured, we find that maximum sentences for similar crimes have been imposed and affirmed on appeal, despite the fact that the victims were not physically injured. See State v. Stanton, 05-0812 (La.App. 4 Cir. 3/8/06), 929 So.2d 137, 141 (in which the Fourth Circuit Court of Appeal found that the maximum sentence of twenty years for an attempted manslaughter conviction was “in no way” excessive under facts similar to those presented in this case) and State v. Falkins, 880 So.2d at 912 (wherein this Court rejected defendant’s argument that the maximum sentence of ninety-nine years for his armed robbery conviction was excessive because the victims were not physically injured).
Under the facts of this case — where defendant pulled the trigger of a firearm at point blank range at the victim’s head twice and the victim survived only because of the firearm’s malfunction — we find the sentences imposed are not grossly disproportionate to the severity of the offenses and, therefore, are not unconstitutionally excessive.[8]

ERRORS PATENT DISCUSSION

We have reviewed the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals the following errors:
1 uFirst, our review reveals a conflict between the transcript and the “Uniform Commitment Order,” which reflects the incorrect date of offense. The Uniform Commitment Order reflects the date of the offense as June 23, 2010. However, the testimony at trial reflects that the date of the offense was June 19, 2010. Where there is a conflict between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Further, the Uniform Commitment Order also reflects an adjudication date of July 11, 2013; however, the record is clear that defendant was actually found guilty on June 18, 2013. Therefore, we remand this case for correction of the Uniform Commitment Order error regarding the adjudication date and the date of of *336 fense. See State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142. See also State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846; State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, 41.
Second, our review reveals a discrepancy between the commitment and transcript with regard to the hard labor provision of defendant’s sentence for his attempted second-degree murder conviction. Although the commitment reflects that defendant’s sentence was imposed at hard labor, the transcript does not reflect that the trial judge ordered the sentence be imposed at hard labor or provided that the sentence would be served with the Department of Corrections.
La.C.Cr.P. art. 879 requires a court to impose a determinate sentence. If the applicable sentencing statute allows discretion, the failure to indicate whether the sentence is to be served at hard labor is an impermissible indeterminate sentence. State v. Norman, 05-794 (La.App. 5 Cir. 3/14/06), 926 So.2d 657, 661, writ denied, 06-1366 (La.1/12/07), 948 So.2d 145. Defendant was sentenced pursuant to La. R.S. 14:30.1, which mandates the sentence be served at hard labor. As such, |1fithe trial court’s failure to state that the sentence was imposed at hard labor is harmless error and no corrective action is required. See State v. Norman, supra; State v. Dennis, 12-818 (La.App. 5 Cir. 5/16/13), 118 So.3d 1166, 1174, writ denied, 13-1384 (La.12/6/13), 129 So.3d 530.
Third, the record reflects that the trial court failed to adequately advise defendant of the time period for seeking post-conviction relief as required by La. C.Cr.P. art. 930.8. Accordingly, we hereby advise defendant that, pursuant to La. C.Cr.P. art. 930.8, no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. art. 914 or 922. See State v. Ramsey, 10-333 (La.App. 5 Cir. 1/25/11), 60 So.3d 36, 42.

CONCLUSION

Accordingly, for the foregoing reasons, defendant’s convictions and sentences are affirmed.

CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT.

. The bill of information also charged defendant with attempted first degree murder in violation of La. R.S. 14:27:30 (count one). The trial court severed the attempted first degree murder charge (count one) from the armed robbery with a firearm and attempted second degree murder charges (counts two and three).

. The trial court held competency hearings on September 22, 2010, January 19, 2011, and June 27, 2012. The trial judge appointed a sanity commission to evaluate defendant. After each hearing, the trial judge found defendant competent to stand trial. On June 17, 2012, and June 18, 2012, defense counsel clarified that defendant pled not guilty and not guilty by reason of insanity as to count one of the indictment (attempted first-degree murder) and not guilty as to counts two and three (attempted second-degree murder and armed robbery) — the counts at issue in this appeal.

. Mr. Renouff further testified that the lighting near the tow yard is very good.

. Detective Canas testified that the distance between Moon's Towing, where the crime occurred, and LaBella Motel, the location of defendant's arrest, is 0.3 mile.

. Defendant’s assignment of error, in full, is stated as follows:
Byon [sic] Ross, a schizophrenic, had been the victim of physical abuse and ridicule by family members, neighbors and complete strangers since he was a young boy. Unfortunately, his father also suffered from this mental disease and had been committed to a group home for the mentally disturbed since Ross was born. Ross' mother helped him as best she could, but there were moments where Ross' behavior and mental needs were too overwhelming. Ross' mother eventually evicted him from her home and forced him to live on the street. She would get him hospitalized when possible, but she was virtually helpless against Ross' mental disease.
After being convicted of armed robbery, the district court heard testimony from the physician who had evaluated all of Ross' medical data, including his diagnoses and medications. She verified that Ross was indeed a schizophrenic who had substance abuse problems. Notwithstanding this information, the district court imposed the statutory maximum sentence against Ross despite his long history with mental illness and the chance that he may have been suffering from hallucinations at the time of the robbery.

. The record reflects that defendant’s mother unexpectedly died in an automobile accident prior to trial.

. Dr. Deland testified that defendant was hospitalized three times at DePaul Hospital, once at Tulane Hospital, once at East Lake Hospital, once at Touro Hospital, and once at Ochs-ner Hospital. Additionally, after he evacuated to Texas following Hurricane Katrina, he was hospitalized twice in Houston. At one point, prior to a hospitalization in Houston, defendant was found on the street eating rocks and paint.

. In this case, the district court was again faced with grappling with the overwhelming danger posed by an offender suffering from profound mental illness. Defendant poses a grave danger to the community. The utter failure of the Louisiana mental health system to cope with this defendant’s life-long mental illness means that, for the remainder of defendant’s life, his mental health treatment will be rendered in the Louisiana state prison system and will be paid for by the people of Louisiana out of the state’s general fund.