Stephen j. windhorst, judge.
|2On January 16, 2014, a twelve-person jury found defendant, Chad Wilson, guilty of the lesser included offense of second degree battery (count one) and guilty of armed robbery (count two).[1] Defendant was sentenced to five years imprisonment at hard labor on count one and thirty years imprisonment at hard labor on count two to run concurrently with each other. For the reasons that follow, we affirm defendant’s convictions and sentences, and remand for correction of the commitment.
FACTS
On May 31, 2013, the victim, Cory Millet, was sitting in his car listening to music (“beats”) he produced since his two year old daughter was upstairs taking a nap in her bedroom.[2] Mr. Millet saw defendant pull up and go to the back of the apartment complex. Mr. Millet left his car and went into his apartment, but returned to make sure the car was locked. Mr. Millet saw defendant return to a parked vehicle along with three other individuals. Mr. Millet had never met |sdefendant. As Mr. Millet was returning to his apartment, he passed defendant getting into his vehicle and defendant asked him if he “smoked” and if he “had a light.” Mr. Millet responded he did not smoke cigarettes, but he did have a lighter. Defendant asked Mr. Millet if he would mind waiting until they rolled a “blunt” in the back of the vehicle.
Defendant then asked Mr. Millet if he knew someone who sold weed. Mr. Millet responded that he did, and defendant asked Mr. Millet for his drug dealer’s phone number.[3] Mr. Millet told defendant he did not give out other people’s phone numbers. Defendant told Mr. Millet he *360 wanted his number and Mr. Millet gave defendant his own phone number. Defendant called Mr. Millet’s phone, and his phone number appeared on Mr. Millet’s phone without a contact name.
Defendant also asked Mr. Millet if he knew someone who wanted to buy a gun. Mr. Millet responded some of his “artists” might be interested. Defendant offered to show him a .25 caliber gun, but requested to show it in Mr. Millet’s house. Mr. Millet retrieved his .45 caliber gun,[4] placed it behind his waist, and allowed defendant into his apartment because he thought he was “protected in the neighborhood.”[5] After defendant showed Mr. Millet the gun, he called “B-Mac”[6] regarding the potential sale of the gun. While Mr. Millet was on the phone, defendant pointed the .25 caliber gun at him and stated, “you know you’re jacked, right?” Mr. Millet asked defendant if he was serious and hung up the phone. Defendant instructed Mr. Millet to remove the clip from his .45 caliber gun, and he complied by ejecting the bullets from the clip onto the stairs. Defendant also ^ordered Mr. Millet to remove the round from the chamber, and it fell on the stairs. Defendant took Mr. Millet’s .45 caliber gun and tucked it into his waistband.
While defendant was focused on Mr. Millet’s dog, Mr. Millet grabbed defendant’s gun and jumped on him. Mr. Millet and defendant wrestled for approximately three seconds, during which the defendant shot Mr. Millet in the chest, then ran out. Mr. Millet immediately pressed down on the wound and called 9-1-1. Officers responded within two to three minutes.
Officer Bryan Weiter was the first officer on the scene at 3540 Martinique Drive. Mr. Millet told Officer Weiter he had been shot and his two year old daughter was inside the apartment. Officer Weiter brought Mr. Millet outside and he gave Officer Weiter a description of the shooter. Mr. Millet told him that the shooter asked him for a lighter for a marijuana cigarette, the shooter then said “you just got jacked,” pointed a .25 caliber gun at him and took his .45 caliber gun.
Detective Charlotte Synigal, the lead case officer, testified someone brought her Mr. Millet’s two year old daughter, and the child was “really shaken up.” There were live rounds of ammunition on the staircase, and Detective Synigal and the other officers searched the entire house. The officers found a small amount of narcotics in Mr. Millet’s residence and did not find any weapons. Detective Synigal testified that Mr. Millet described the shooter as an unknown black male with a long dread-lock hair style and a medium brown complexion. She was informed the shooter fled the scene in a two-tone silver vehicle.
Detective Synigal testified the officers recovered Mr. Millet’s cell phone and a .45 caliber magazine from his pocket. She reviewed Mr. Millet’s cell phone and discovered Mr. Millet had been contacted from a phone number that was not saved in his contact list. The “ARMS” database *361 was consulted and she discovered the phone number was associated with defendant. Detective Synigal verified with 1 Rother officers that defendant matched the description provided by Mr. Millet. Detective Synigal generated a photographic lineup that included defendant and presented the lineup to Mr. Millet. Detective Synigal testified that Mr. Millet was certain when he chose defendant from the lineup.[7]
After Mr. Millet’s identification of defendant, Detective Synigal prepared arrest and search warrants. The officers received information from the “ARMS” database regarding a two-tone silver vehicle associated with defendant. Defendant was arrested during a traffic stop in St. John the Baptist Parish and was transported to the jail in that parish where Detective Synigal made contact with defendant later that night. She advised defendant of his rights, and defendant signed a waiver of rights form. Defendant subsequently provided a statement wherein he denied any knowledge of the shooting.
Detective Synigal testified she also requested defendant’s phone calls made on June 2, 2013, from the jail. After listening to the jailhouse telephone recordings, she contacted the jail to have defendant’s phone call privileges suspended for Mr. Millet’s safety.
DISCUSSION
In defendant’s first counseled supplemental assignment of error,[8] defendant argues that the evidence was insufficient to prove he committed an armed robbery or second degree battery.[9]
I (iln reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). Under the Jackson standard, a review of a criminal conviction for sufficiency of evidence does not require the court to ask *362 whether it believes that the evidence at trial.established guilt beyond a reasonable doubt. State v. Alexander, 12-836 (La.App. 5 Cir.5/23/13), 119 So.3d 698, 702, writ denied, 13-1981 (La.3/21/14), 135 So.3d 614 (citing State v. Flores, 10-651 (La.App. 5 Cir. 5/24/11), 66 So.3d 1118, 1122).
To support a conviction of armed robbery under La. R.S. 14:64, the State must prove beyond a reasonable doubt (1) the taking (2) of anything of value (3) belonging to another from the person of another or that is in the immediate control of another, (4) by use of force or intimidation (5) while armed with a dangerous weapon. State v. Preston, 09-856 (La.App. 5 Cir. 5/25/10), 40 So.3d 1052, 1058, writ denied, 10-1492 (La.1/14/11), 52 So.3d 900. Property that is taken is considered under the victim’s control when the victim could have prevented the taking had he not been subjected to the robber’s violence or intimidation. State v. Martin, 07-1035 (La.App. 5 Cir. 10/28/08), 996 So.2d 1157, 1160. The State need not prove that the property taken was owned by the victim but only that the |7accused was not the owner, and the victim had a greater right to.the item than the accused. Id.
Defendant argues that he denied taking Mr. Millet’s gun and the stolen property was never found in defendant’s possession,[10] and that he presented a reasonable alternative hypothesis of innocence, and thus, the State did not have sufficient evidence to support his conviction for armed robbery. In essence, he claims that the case against him was circumstantial.
Defendant’s conviction for armed robbery was supported by sufficient evidence, although Mr. Millet’s gun was never found. Although defendant argues that the circumstantial evidence was not sufficient to convict him of armed robbery, we find the State presented evidence of each element of the crime through direct evidence, specifically, the testimony of Mr. Millet. Mr. Millet testified defendant pointed a gun at him, stated he was “jacked,” and forced him by threats of bodily harm with a gun pointed at him to remove the bullets from his .45 caliber gun, leaving the bullets on the stairs. Mr. Millet further testified defendant “took” his gun and placed it in his waist. The officers’ testimony and the physical evidence corroborated Mr. Millet’s version of the events. Inasmuch as the elements of this case were proven by direct evidence, which was supported by additional circumstantial evidence, this is not a circumstantial case in which the State must exclude every reasonable hypothesis of innocence.
Because the direct evidence provided by the victim, if believed by the trier of fact, established all of the essential elements of armed robbery, the only question j^on sufficiency review is whether the jury acted rationally in finding the victim’s tes *363 timony credible. State v. Davis, 02-1043 (La.6/27/03), 848 So.2d 557, 558. A victim’s testimony alone is therefore usually sufficient to support a verdict. Id. The jury was aware of defendant’s testimony that he did not take Mr. Millet’s gun and it was never found in his possession. We do not find that the jury’s verdict relying on the credibility of Mr. Millet to have been irrational. A rational trier of fact considering the evidence most favorably to the State would not be unreasonable in finding defendant shot Mr. Millet in connection with defendant robbing Mr. Millet of his gun.
Defendant also argues that reliance on Mr. Millet’s testimony to prove the armed robbery was misplaced because of the inconsistencies in Mr. Millet’s statements. Defendant argues the jury unreasonably ignored these critical inconsistencies.
Mr. Millet testified during cross-examination that to his knowledge the only thing different from his previous statement to police and his testimony at trial was he did not initially mention he was on the phone during the incident. The record reflects defense counsel did not attempt to impeach Mr. Millet regarding any alleged prior inconsistent statement.
During cross-examination, Detective Sy-nigal testified Mr. Millet initially stated defendant pushed his way into Mr. Millet’s residence uninvited. According to Detective Synigal, Mr. Millet changed his story and stated he invited defendant into the residence. Detective Synigal also stated Mr. Millet did not initially disclose the narcotics discussion. Detective Synigal further testified that at the time of trial she was no longer “skeptical” of Mr. Millet’s version of the incident.
Based on the circumstances, we find there is no reason to believe the jury relied on any alleged prior inconsistent statement by Mr. Millet to prove an ^element of the crimes. The jury was presented with Mr. Millet’s testimony that he and defendant discussed narcotics, and that Mr. Millet allowed defendant into his residence to facilitate the sale of a gun. Thus the alleged prior inconsistent statements were not relied upon to prove the State’s case. See State v. Hensley, 00-1448 (La.App. 5 Cir. 2/28/01), 781 So.2d 834, 841-42.
It is not the function of the appellate court to assess the credibility of witnesses or reweigh evidence. State v. Robinson, 02-1253 (La.App. 5 Cir. 4/08/03), 846 So.2d 76, 81-82, writ denied, 03-1361 (La.11/26/03), 860 So.2d 1131 (citing State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Lewis, 98-672, p. 10 (La.App. 5 Cir. 3/10/99), 732 So.2d 556, 560, writ denied, 99-2818 (La.4/20/00), 760 So.2d 334). A rational juror could have concluded beyond a reasonable doubt that defendant took something of value from Mr. Millet’s immediate control as defined by La. R.S. 14:64. Accordingly, the record contains sufficient evidence to support defendant’s conviction of armed robbery as set forth in count two of the bill of information. See Hensley, supra. Considering the foregoing, this assignment of error is without merit.
In his second counseled supplemental assignment of error, defendant argues the trial court erred in admitting the jailhouse telephone recordings and the recordings only served to inflame the jury against defendant.
On December 13, 2013, defendant filed a motion in limine to limit the State’s use of any transcripts and recordings of defendant’s jailhouse telephone conversations. After listening to the recordings, the trial court denied defendant’s motion in limine.
Prior to jury selection, defense counsel stated there were five excerpts from the *364 jailhouse telephone recordings the State wanted to play for the jury and defense objected to all five excerpts. However, defense counsel admitted the excerpt | mdealing with the pistol- was relevant. Defense counsel went through each excerpt and the trial court found each of the five excerpts was admissible.[11] The State played the jailhouse telephone recordings to the jury.
La. C.E. art. 401 defines relevant evidence as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” All relevant evidence is admissible, unless prohibited- by law or by the constitution. State v. Magee, 11-0574 (La.9/28/12), 103 So.3d 285, 321, cert. denied, — U.S. -, 134 S.Ct. 56, 187 L.Ed. 49 (2013) (citing La. C.E. art. 402). Relevant evidence may be excluded, however, if its probative value is outweighed by “the ' danger of unfair prejudice.” Magee, supra (citing La. C.E. art. 403).
The district court is afforded great discretion in determining whether evidence is relevant. Magee, supra; State v. Declouet, 09-1046 (La.App. 5 Cir. 10/12/10), 52 So.3d 89, 104, writ denied, 10-2556 (La.4/8/11), 61 So.3d 681. A trial judge’s determination regarding the relevancy and admissibility of evidence Inwill not be overturned on appeal absent a clear abuse of discretion. State v. Sandoval, 02-230 (La.App. 5 Cir. 2/25/03), 841 So.2d 977, 985, writ denied, 03-853 (La.10/3/03), 855 So.2d 308. See also Magee, supra. The trial court’s ruling on the admissibility of evidence will generally not be disturbed on appeal unless the prejudicial effect of the evidence outweighs its probative value. State v. Johnson, 11-63 (La.App. 5 Cir. *365 11/15/11), 78 So.3d 255 (citing State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1026).
Evidence of attempts by a defendant to intimidate witnesses for the State has substantial probative value and actions on the part of the defendant which are designed to prevent witnesses from testifying will give rise to an inference the defendant acted from an awareness or consciousness of his own guilt. State v. Johnson, 426 So.2d 95 (La.1983) (citing State v. Burnette, 353 So.2d 989, 992 (La.1977)). See also State v. Lewis, 12-0803 (La.App. 4 Cir. 09/25/13), 125 So.3d 1252, 1263, writ denied, 13-2537 (La.6/20/14), 141 So.3d 279 (The appellate court found that the excerpts from the jailhouse telephone recordings showed the defendant’s intent to deal with or intimidate the witnesses against him.).
The jailhouse telephone recordings were relevant to the State’s prosecution of defendant for armed robbery and second degree battery. The excerpts from the jailhouse telephone recordings showed defendant’s intent to deal with or intimidate the witness against him. Particularly, defendant stated, “what about ‘no face, no case,’ ” and indicated that he was not going to kill himself but would kill “him.”[12] Defendant explained, “but not me, I got somebody else.”
Defendant stated he did not believe his theory of self-defense would be successful and that someone needed to “check him out.” Defendant stated he did |12not want to talk about it over the phone but he needed “that checked out.” Defendant then instructed the unidentified man to talk to someone before defendant was “locked up.”[13] Defendant further stated “BB know who the ni* *er is.” Defendant later instructed his mother to talk to BB and also said, “call her and go get her to talk to him.” Defendant’s mother responded that they did not want to be involved and showed concern that someone would say that she was “harassing.”
The excerpts from the jailhouse telephone recordings also documented defendant’s possible concealment of evidence. In one jailhouse telephone recording, defendant asked his mother how it would look if he “could get that pistol back to 'em.” Therefore, the jailhouse telephone recordings were relevant and admissible to prove consciousness of guilt from which the fact-finder may infer guilt. See State v. Johnson, 426 So.2d 95, 102-03; State v. Owens, 14-41 (La.App. 5 Cir. 9/24/14), 151 So.3d 86. The prejudicial effect of the jailhouse telephone recordings did not outweigh its probative value.
Considering the foregoing, we find defendant’s second counseled supplemental assignment of error is without merit.
In defendant’s appellate counsel’s assignment of error, he argues the maximum sentence of five years for second degree battery and a “hefty” thirty years of imprisonment for armed robbery are constitutionally excessive. Defendant contends the incident occurred during a drug and firearm transaction. Defendant argues he *366 is only twenty-two years old and a first-time felony offender.
Prior to imposition of defendant’s sentence, Mr. Millet provided a victim impact statement. Mr. Millet stated that if he had not bent over during the struggle, the bullet would have struck his chest and killed him. Mr. Millet also stated that | ishis lung re-collapsed one week later and he had to have a second surgery, during which he almost lost his life. Mr. Millet stated his lung was still not 100 percent, and it would take more than a year to recover from his most recent surgery. The bullet is still lodged in his shoulder blade.
After Mr. Millet’s victim impact statement, defense counsel argued that the incident was a drug deal that went wrong. The detectives testified there had been no threats reported since and no threats had been acted upon. Defense counsel argued that defendant only had one felony arrest and had no felony convictions on his record.
Defendant also made his own statement at the sentencing hearing. Defendant stated that although he was not pleading guilty, he was sorry the incident ended with him shooting Mr. Millet. He felt he was fighting for his life and Mr. Millet would have shot him. Defendant stated he was highly' intoxicated and he “was on Zanbar for all the jail tapes and stuff, so I was just talking out my head.” Defendant stated he and his family did not have any intention of doing “any wrong” to Mr. Millet.
Prior to imposing sentence, the trial judge stated defendant may have been taking drugs but someone could have died. She found that although Mr. Millet lived, he suffered a lot of pain for something that did not have to happen. She also stated she listened to the trial, including the jailhouse telephone recordings and Mr. Millet’s impact statement. After imposition of sentences, defense counsel objected to the sentences. Defendant failed to file a motion to reconsider sentence.
The failure to file a motion to reconsider sentence limits defendant to a bare review of his sentence for constitutional excessiveness. See State v. Ross, 13-924 (La.App. 5 Cir. 5/28/14), 142 So.3d 327, 333 (citing State v. Hunter, 10-552 (La.App. 5 Cir. 1/11/11), 59 So.3d 1270, 1272); State v. Holmes, 12-579 (La.App. 5 14Cir. 5/16/13), 119 So.3d 181, 200, writ denied, 13-1395 (La.1/10/14), 130 So.3d 318. Accordingly, since defendant failed to file a motion to reconsider sentence, he is limited to a bare review of his sentences for constitutional excessiveness.
The Eighth Amendment of the United States Constitution and Article 1, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense, or imposes needless and purposeless pain and suffering. Holmes, 119 So.3d at 200; Ross, supra (citing State v. Horne, 11-204 (La.App. 5 Cir. 2/14/12), 88 So.3d 562, 569, unit denied, 12-0556 (La.6/1/12), 90 So.3d 437; State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839). In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court’s sense of justice. Holmes,- supra; see also Ross, 142 So.3d at 333 (citing State v. Lobato, 603 So.2d 739, 751 (La.1992)).
The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record *367 supports the sentence imposed. Holmes, supra; see also Ross, supra (citing La. C.Cr.P. art. 881.4(D); State v. Berry, 08-151 (La.App. 5 Cir. 6/19/08), 989 So.2d 120, 131, writ denied, 08-1660 (La.4/3/09), 6 So.3d 767; State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656). A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and therefore, is given broad discretion in sentencing. Holmes, 119 So.3d at 200; see also Ross, supra (citing State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, 958 (per curiam), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996)). The issue on appeal is whether the trial court abused its discretion, not whether 115another sentence might have been more appropriate. Holmes, supra; see also Ross, supra.
The imposition of a sentence, although within the statutory limits, may still violate a defendant’s constitutional right against excessive punishment. Ross, 142 So.3d at 334 (citing State v. Scie, 13-634 (La.App. 5 Cir. 1/15/14), 134 So.3d 9, 12). In considering whether the trial court abused its discretion in sentencing a defendant, a reviewing court should consider 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentences imposed for similar crimes by other courts. See Holmes, 119 So.3d at 200; Ross, supra (citing Home, supra). The reviewing court must keep in mind that maximum sentences are reserved for the most egregious offenders. Holmes, supra; see also Ross, supra.

Second degree battery (count one)

Defendant was convicted of the lesser included offense of second degree battery in violation of La. R.S. 14:34.1 (count one). At the time of the offense,[14] defendant’s conviction for second degree battery was punishable by a fíne of not more than two thousand dollars or imprisonment, with or without hard labor, for not more than five years, or both. La. R.S. 14:34.1(C). Therefore, defendant’s sentence for second degree battery, although the maximum sentence allowed under the law at the time of the offense, was within the applicable sentencing range. See State v. Faulkner, 570 So.2d 516, 518 (La.App. 5 Cir.1990) (where this Court 11fiaffirmed a five-year hard labor sentence for second degree battery committed by a first-time offender); State v. Bowie, 482 So.2d 90 (La.App. 4 Cir.1986) (where the appellate court found the defendant’s five-year sentence for second degree battery was not excessive); State v. Dugas, 441 So.2d 824 (La.App. 3 Cir.1983) (where the appellate court found the maximum sentence of five years imprisonment for second degree battery was not excessive). See also State v. Jacobs, 11-363 (La.App. 3 Cir. 10/05/11), 74 So.3d 884, 899, writ denied, 11-2469 (La.3/9/12), 84 So.3d 552, where the appellate court found that the defendant’s five-year sentence for his conviction of second degree battery did not constitute an abuse of the trial court’s sentencing discretion. The court indicated that although defendant was a first-time offender, the facts of the case constituted the most serious type of second degree battery violation. Id.
Defendant endangered a two-year-old child that was in the residence when he fired a gun. The bullet struck its intended target, Mr. Millet, who was unarmed. Mr. Millet was shot in the chest and suffered serious injury to his lung, which required *368 surgery. His lung re-collapsed a week after the incident, and he had to endure a second surgery, from which he stated his recovery would take more ■ than a year.
Therefore, although defendant was a first-time felony offender, the facts of this case constitute the most serious type of second degree battery violation. The trial court did not abuse its discretion in sentencing defendant to five years.

Armed robbery (count two)

Defendant was also convicted of armed robbery (count two). Defendant’s conviction for armed robbery was punishable by imprisonment at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64(B). Therefore, | ^defendant’s thirty-year sentence on count two was within the sentencing range allowed under the law. See State v. Ragas, 07-3 (La.App. 5 So.2d 266, 273, writ denied, 07-1440 (La.1/7/08), 973 So.2d 732, cert. denied, 555 U.S. 834, 129 S.Ct. 55, 172 L.Ed.2d 56 (2008). Cir. 5/15/07), 960
Defendant’s thirty-year sentence for his armed robbery conviction was not constitutionally excessive. Defendant placed the lives of Mr. Millet and his two-year-old daughter in jeopardy when he robbed Mr. Millet with a gun, and then shot Mr. Millet. Defendant’s thirty-year sentence was far less than one-half the maximum possible sentence for armed robbery. See Ragas, supra; see also State v. Thibodeaux, 05-680 (La.App. 3 Cir. 12/30/05), 918 So.2d 1093; State v. Leday, 442 So.2d 667 (La.App. 1 Cir.1983); State v. Marchese, 430 So.2d 1303 (La.App. 1 Cir.1983).
Given the facts of this case, defendant’s sentences are not grossly out of proportion to the offenses. Accordingly, we find that the sentences imposed were not constitutionally excessive, and the trial court did not abuse its discretion in the imposition of defendant’s sentences. This assignment of error is without merit.
ERROR PATENT DISCUSSION
Defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with the mandates of La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. The following error patent requires corrective action.
The State of Louisiana Uniform Commitment Order provides the date of the offenses as June 1, 2013; however, the record reflects the offenses were committed on May 31, 2013. Therefore, we remand this case and order the Uniform Commitment Order be corrected to reflect the correct date of the offenses. We also the Clerk of Court to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ legal department. State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, writ denied, 14-0481 (La.11/7/14), 152 So.3d 170 (citing State ex rel. Roland v. State, 06-0224 (La.9/15/06), 937 So.2d 846 (per curiam)); see also La.C.Cr.P. art. 892B(2). We further order a copy of this opinion be delivered to the Clerk of Court for the Twenty-Fourth Judicial District Court. _bdirect
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT

.The bill of information initially charged defendant with aggravated battery with a dangerous weapon, to wit: a pistol, upon "Carey Millet” in violation of La. R.S. 14:34 (count one) and armed robbery with a dangerous weapon, to wit: a pistol, upon "Carey Millet” in violation of La. R.S. 14:64 (count two). The defense and the State stipulated that the “Carey Millet” listed in the bill of information was the same person as Cory Millet.

. Mr. Millet said he had his .45 caliber gun sitting on the car seat with him while he was outside. When he went inside, he placed the weapon in the stand inside because he was going to the store. When he went back outside and ran into defendant, he did not have his gun with him.

. Mr. Millet subsequently acknowledged he was a middle man for the marijuana dealings of B-Mac.

.Mr. Millet testified that he carried a gun for protection because a couple of months earlier there was an exchange of gunfire on his street, his house had been burglarized, an artist he previously worked with had threatened him, and people have “dealt heroin out of my alley.” Mr. Millet acknowledged he smoked "weed” but denied being a “gangban-ger.”

. Mr. Millet testified the “artists” who he produced music for had a strong reputation, and he thought people knew to leave him alone.

. "B-Mac" is also referred to as B. Mac, Bernard Mac, and Bernie Mac. He will be referred to as “B-Mac” in this opinion for consistency.

. Mr. Millet testified Detective Synigal presented him with a photographic lineup and he looked at the lineup for approximately five or ten seconds before identifying defendant as the person who shot him.

. When the issues on appeal relate to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992).

. Although defendant claimed the evidence was insufficient for his second degree battery conviction, defendant failed to set forth any argument in his brief. U.R.C.A. 2-12.4 provides all assignments of error must be briefed or the appellate court may consider the assigned error as abandoned. Defendant only briefly mentions his second degree battery conviction. Specifically, defendant argues that "[b]y contrast, second degree battery requires proof of a specific intent to inflict 'serious bodily harm,’ ” citing State v. Helou, 822 So.2d 647, 654 (La.App. 3 Cir. 06/05/02), and “defendant's weapon discharged without the defendant intending to do any great bodily harm to C.M., but, instead, trying to defend himself from C.M.’s attack.” Defendant has failed to properly brief the issue pertaining to his second degree battery conviction, thus, we find this argument to be abandoned. See State v. McClure, 14-253, 169 So.3d 510, 521, 2015 La.App. LEXIS 494, at *18 n. 17 (La.App. 5 Cir. 3/11/15) (citing State v. Jacobs, 07-887 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, 588, writ denied, 11-1753 (La.2/10/12), 80 So.3d 468, cert. denied, - U.S. -, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012)). See also State v. Allen, 06-778 (La.App. 5 Cir. 4/24/07), 955 So.2d 742, 757-78, writ denied, 08-2432 (La.1/30/09), 999 So.2d 754.

. Sergeant Brian McGregor testified he advised defendant of his rights and defendant waived them via a waiver of rights form prior to providing a statement. Defendant did not appear to be intoxicated or to have any mental difficulties. Defendant indicated that he had a 10 th grade education and had completed his G.E.D. Defendant changed his story and stated that he was at Mr. Millet’s apartment. Defendant said that Mr. Millet offered him some "weed” so he followed him into the apartment. Defendant said that Mr. Millet pulled his .45 caliber gun out and pointed it at defendant. Defendant grabbed Mr. Millet’s hand and for his own .25 caliber gun. Defendant stated that he shot Mr. Millet once and ran out of the apartment. He said he threw his gun "off the spillway bridge.” Defendant denied taking anything from Mr. Millet. Defendant did not provide a reason why Mr. Millet would have pulled his gun or that a struggle made it necessary for defendant to grab at Mr. Millet.

. In the first excerpt, defendant was engaged in a conversation with his mother when he asked "What about no face, no case?” His mother asked him if he planned to "kill himself” and defendant responded "no, him.” Defendant’s mother told defendant to "shut up” and to "stop talking stupid.” Defendant told his mother, “not me, I got somebody else.” Later in the same conversation, defendant again said "no face, no case.”
In the second excerpt, defendant told his mother to ask his father "how that sh* * look, if you know what I’m saying, if I could get that pistol back to 'em [sic].” Defendant’s mother told defendant not to discuss the subject over the phone but "it ain’t [sic] gonna look good at all.”
In the third excerpt, defendant stated to his mother, "Should I let daddy bring them to you; you know, self-defense isn’t going to work; know you’re going to need to check himself out [sic].” Defendant was also talking to a man named Kenneth who asked defendant about self-defense. Defendant responded, "I don’t think that sh* * would work, son.” Defendant also said, “I really think ni* * *er need to check him out.”
In the fourth excerpt, defendant was talking to an unidentified male. Defendant stated the man "probably don’t want to do it.” Defendant also said “but this sh* * really about my life, son.” Defendant told the man "I don’t want to say it over the phone, I need that checked out, son.” Defendant further instructed the man to "go talk to her tonight before I’m locked up” and "tell her to talk to BB.” Defendant stated, "BB know who the ni* *er is,” and the male responded "yeah.” Another male, named "Little B,” joined the conversation and defendant told both of them to talk to someone that night, “ASAP,” or it would be like the other situation. Both males responded “It’s a go.”
In the fifth excerpt, defendant told his mother to "go pass by BB.” Defendant’s mother said she was "going to call and find out about that girl.” Defendant told his mother to "call her and go pass by BB.” His mother said she was "going to call and find out about that girl.”. Defendant told his mother to "call her and go get her to talk to him” and "see what that’s about.” His mother replied "We don’t want to be involved in that,” and they would say she was "harassing.” His mother said they would find out what was going on and to let them finish doing their "homework.” She also said they were "going to get eveiything straight.”

. Kevin Underwood, defendant's stepfather, testified that defendant lived with him and his mother in LaPlace. He received phone calls from defendant, while defendant was incarcerated, and defendant never said “no face, no case.’’ Mr. Underwood also testified that defendant never requested him to locate witnesses. Mr. Underwood denied defendant discussing whether or not he should turn over a pistol that he had in his possession.

. In the jailhouse telephone recordings, defendant indicates he was in a holding cell at the time of the phone calls and he was going to be brought “upstairs.”

. The law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, 520.