STATE OF LOUISIANA

VERSUS

ALBERT LEWIS

NO. 24-KA-24

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 23-195, DIVISION "P"
HONORABLE LEE V. FAULKNER, JR., JUDGE PRESIDING

December 04, 2024

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Marc E. Johnson, and Stephen J. Windhorst

**CONVICTION AND SENTENCE AFFIRMED**
    **SJW**
    **JGG**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
ALBERT LEWIS
    Holli A. Herrle-Castillo

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Honorable Paul D. Connick, Jr.
    Thomas J. Butler
    Monique D. Nolan
    Ashton M. Robinson

**WINDHORST, J.**

Defendant/appellant, Albert Lewis, appeals his conviction and sentence for home invasion in violation of La. R.S. 14:62.8, asserting the evidence was insufficient to support his conviction and the trial court imposed an excessive sentence. Upon review, we affirm defendant's conviction and sentence.

**PROCEDURAL HISTORY**

On February 10, 2023, the Jefferson Parish District Attorney filed a bill of information charging defendant, Albert Lewis, with home invasion that occurred on or about December 31, 2022. At his arraignment, defendant pled not guilty.

The case proceeded to a jury trial, and the jury returned a verdict of guilty as charged. The trial court denied defendant's motions for new trial and for post-verdict judgment of acquittal. Before defendant's sentencing, the State read a victim impact statement into the record. Upon considering the victim impact statement and the evidence presented at trial, the trial court sentenced defendant to fifteen years imprisonment at hard labor. The trial court denied defendant's motion for reconsideration of sentence and granted defendant's motion for appeal.

**THE EVIDENCE**

At trial, the State presented the testimony of Lashekia Armand and Jarmante Armand, two victims who lived in the house defendant was charged with invading, as well as Deputy Gavin Martin and Detective Blaine Howard, who were involved in the Jefferson Parish Sheriff's Office's criminal investigation for this case. The testimony and evidence revealed the following.

In December 2022, Lashekia was living on Martin Drive in Marrero with her mother, grandmother,[1] two adult nephews (Jarmante and Winston), and her one-

---

[1] Lashekia explained that they took care of her disabled grandmother who had a brain stem injury.

year-old son. The house next door to them was a well-known "crack house" with drug activity on a continuous basis for years.

On December 31, 2022, Lashekia was getting her son ready to go to a party, and between 1:00 P.M. to 2:00 P.M., she took him outside to take pictures. As she was taking pictures of her son, she heard someone hollering at the house next door, beating on the door, and yelling incoherently. Defendant, a big and tall black male, came walking up the sidewalk in front of her house and aggressively yelled he was God and something about angels.[2] Defendant walked into her yard, about seven feet away from her, and continued talking to her. Lashekia testified she grabbed her son and told defendant not to come any closer. Instead of retreating, defendant approached her and forcefully grabbed her. Lashekia struggled to escape his grip on her. When she finally escaped, she slapped defendant and ran inside with her son.

Once inside the house, Lashekia gave her son to her nephew and called her mom, who did not answer the phone. Lashekia heard her nephews telling someone not to come in the house. She went to her room and grabbed her gun, a small .38 Taurus handgun. As she came toward the front of the house, she saw her nephew trying to get a knife from the drawer, and she told him to put it away. Lashekia stated that she cocked her gun back, but it jammed. At this point, defendant had busted the iron door open, and the knob had broken off. He stepped into the house, and she told him not to come in as she aimed the gun. He made a gesture as if to say "come on," and she shot him.

Lashekia testified that she shot at defendant because she was scared for her life and her family. She thought if he continued to come in the house, he would have killed them. After she shot defendant, she put the gun down on the counter and made a 9-1-1 call to the police.[3] On the 9-1-1 call, she informed the operator that she

---

[2] Lashekia testified that defendant had white liquid on his nose and foam near his mouth.

[3] The State played Lashekia's 9-1-1 call for the jury. Nancy Cleary, custodian of records with JPSO 9-1-1 Communications, testified regarding the recording's authenticity.

needed the police because she had shot an unknown "crackhead" who came to her house and knocked down the door. She stated he broke her door, was screaming, and grabbed her when she was outside with her baby.

At trial, Lashekia identified crime scene photographs showing the door defendant had been "banging on," the iron door with a broken screen and a broken lock caused by defendant, and the entrance to the house into the kitchen, which is where defendant's foot had crossed the threshold of the doorway attempting to force his way into her house. She also identified a photograph that showed dents on her car, which were caused by defendant beating on her car and were not present before this incident.

Deputy Gavin Martin of the Jefferson Parish Sheriff's Office (JPSO) testified that he responded to Lashekia's call on December 31, 2022. He confirmed that the house next door to Lashekia's house has long been known as a "crack house." Upon his arrival, Deputy Martin found a black male bleeding and lying face down in the driveway near the door of the residence. He determined that the bleeding was from a gunshot wound. He testified that he did not question Lashekia but secured her in the rear of a marked patrol unit to wait for detectives to speak to her.

Detective Blaine Howard with JPSO's Gun Violence Unit testified that he assisted with this investigation, and that he was familiar with the area, having patrolled it when he was assigned to the narcotics unit. He confirmed that the house next door to Lashekia was a known drug residence. Detective Howard identified Lashekia as the shooter, and he spoke with her on the scene before she was transported to the police station. He found her cooperative but upset and shaking.

Detective Howard obtained a search warrant for the residence and conducted the search. He found a bent iron door, blood on the ground near the door, and a broken locking mechanism on the ground with the pieces scattered on the ground. He testified that these were consistent with the door being forced open.

Detective Howard also obtained surveillance camera footage from cameras affixed to the house at three different angles.[4] Video footage showed defendant exiting the house next door, acting belligerent and aggressive, and pounding on a vehicle. He testified that the video showed defendant walking towards Lashekia's house where she was outside with her son. Detective Howard described defendant as continuing to act belligerent in the video and pacing back and forth. He confirmed that at one point, defendant charged towards Lashekia and grabbed her. Lashekia was able to break free in the direction of the door. Defendant can then be seen pounding on the car in the driveway and following Lashekia and her son towards the house.

After Detective Howard reviewed all the evidence, he found Lashekia was justified in using self-defense in this situation and did not charge or arrest her. Defendant was taken into custody and booked after he was treated at the hospital.

Jarmante Armand testified that on December 31, 2022, he was in the kitchen cooking, when he heard a man making a commotion outside. While Lashekia was outside with her son, he heard Lashekia's son cry, and he opened the door. Jarmante saw Lashekia running back into the house with her son and the man pursuing them. Jarmante closed and locked the iron door. Jarmante had never seen the man before and did not recognize him. Defendant was standing by the door and was speaking to them, saying, "I am God." He then started "banging on" the door and trying to bust it open. Lashekia handed her baby to Jarmante's brother, and she went to the back of the house. Jarmante and his brother told the man to go away and to not come in the house. Jarmante testified he told defendant not to come in the house multiple times. After continued attempts, defendant eventually forced the door open and knocked the knob off the door. Lashekia came back with a gun and told defendant

---

[4] The State showed the video to the jury with Detective Howard testifying regarding the content.

to go away. Defendant took a step over the silver plate on the ground of the door and into the kitchen, and she shot him. Jarmante testified that he saw defendant's right foot cross the threshold first, and that he was wearing black shoes. After Lashekia shot defendant, Jarmante confirmed she called the police, and they eventually arrived at the house.

**LAW and ANALYSIS**

On appeal, defendant challenges the sufficiency of the evidence presented against him and asserts his 15-year sentence is excessive.

### *Sufficiency of the Evidence*

Defendant argues the evidence was insufficient to support his home invasion conviction because the State failed to prove that he entered the residence. Defendant contends there are inconsistencies between Lashekia's and Jarmante's testimony. He points out Lashekia did not tell the 9-1-1 operator that defendant entered her home, only that he walked into her yard. Defendant argues that the video evidence does not support that he entered the residence, but only that he attempted to do so. Defendant also argues the physical evidence does not show entry into the residence because there's no expert blood splatter testimony. Defendant further avers that considering the body-camera footage shows him lying face down outside the door, it is more logical he was not inside the residence before he was shot. Defendant maintains that because the evidence was insufficient, the conviction must be reversed, or alternatively, reduced to attempted home invasion.

The State responds that it provided sufficient evidence to satisfy all of the elements of home invasion through witness testimony, which the jury believed as credible over the defense theory that defendant did not enter the home. As to the inconsistencies pointed out by defendant, the State argues that defendant had the opportunity to cross-examine the witnesses at trial and that the jury saw the

surveillance video and body camera footage. The State maintains the jury was presented with attempted home invasion as a responsive verdict and rejected it.

In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct, circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Baham, 14-653 (La. App. 5 Cir. 3/11/15), 169 So.3d 558, 566, writ denied, 15-40 (La. 3/24/16), 190 So.3d 1189. In its determination of whether any rational trier of fact would have found the defendant guilty, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. State v. Lane, 20-181 (La. App. 5 Cir. 1/27/21), 310 So.3d 794, 804. The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Gonzalez, 15-26 (La. App. 5 Cir. 8/25/15), 173 So.3d 1227, 1233.

The jury convicted defendant of home invasion, which is defined as:

> Home invasion is the unauthorized entering of any inhabited dwelling, or other structure belonging to another and used in whole or in part as a home or place of abode by a person, where a person is present, with the intent to use force or violence upon the person of another or to vandalize, deface, or damage the property of another.

La. R.S. 14:62.8 A. To prove home invasion, this court has held the State must prove beyond a reasonable doubt 1) defendant entered into the inhabited dwelling or structure without permission or authorization; 2) the dwelling or structure was inhabited or used in whole or in part as a home by another person; 3) a person was present in the home when the defendant made entry; and 4) defendant had the intent to use force or violence against a person in the home or to vandalize, deface, or damage the property. State v. Saulny, 16-734 (La. App. 5 Cir. 5/17/17), 220 So.3d

871, 879, <u>writ denied</u>, 17-1032 (La. 4/16/18), 240 So.3d 923.  La. R.S. 14:62.8 does not include a definition of "entry."

When analyzing the term "entry," the Louisiana Supreme Court has held "entry" occurs when any part of the intruder's body crosses the plane of the doorway. <u>State v. Bryant</u>, 12-233 (La. 10/16/12), 101 So.3d 429, 434.  In <u>Bryant</u>, the supreme court concluded that when defendant kicked in the door with force, defendant's foot necessarily crossed the threshold of the house, even if only minimally, thereby satisfying the "entry" requirement.  <u>Id.</u>  This court has also held that entry occurs whenever any part of the accused's person passes the line of the threshold, and it is sufficient that any part of the person intrudes into the structure, even momentarily. <u>State v. Dibartolo</u>, 14-691 (La. App. 5 Cir. 2/11/15), 168 So.3d 754, 758; <u>State v. Arceneaux</u>, 05-338 (La. App. 5 Cir. 12/27/05), 930 So.2d 44, 48-49.

Lashekia's testimony indicates that while she was outside taking photos of her son, defendant approached her, even though she told him not to come into her yard. At one point, defendant forcibly grabbed her and held her until she managed to escape his grip and run inside with her son.  Lashekia testified she heard her nephews repeatedly tell defendant not to come in the house, but defendant continued to push his way inside.  She stated that when she came back from the rear of her home with her gun, defendant had forced the iron door open and stepped on the threshold. When she told him not to come inside the house, defendant made a gesture toward her, and she shot him.  Lashekia testified that she shot defendant because she was scared for her and her family's lives, and she thought if he came any further into the house, he would have killed them.

Jarmante confirmed that after Lashekia came back inside, defendant started banging on the door and trying to break it open.  Jarmante and his brother told defendant to not come in the house, but defendant did not listen and broke the door down.  Jarmante also testified that defendant took a step over the threshold of the

door before Lashekia shot him. He testified that he thought defendant was going to hurt them.

Detective Howard confirmed the evidence at the scene indicated defendant had broken the door in, the iron door was bent, and the locking mechanism was scattered all over the ground.

Given the testimony at trial, we find the evidence was sufficient to show that defendant did in fact enter the home by crossing the threshold. Although defendant challenges the witnesses' testimony, the verdict indicates the jury believed the State's witnesses, particularly Lashekia and Jarmante. When conflicting testimony is presented, the credibility of witnesses on factual matters is within the sound discretion of the trier of fact. State v. Stock, 16-552 (La. App. 5 Cir. 2/22/17), 212 So.3d 1268, 1275. The trier of fact can accept or reject, in whole or in part, the testimony of any witness. It is not the "function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence absent impingement on the fundamental due process of law." State v. Mitchell, 09-996 (La. App. 5 Cir. 5/25/10), 40 So.3d 1122, writ denied, 10-1557 (La. 10/21/11), 73 So.3d 370.

In light of the foregoing, viewing the evidence in a light most favorable to the prosecution, we find a rational trier of fact could have found beyond a reasonable doubt that the evidence was sufficient to support defendant's conviction.

*Sentencing*

Defendant claims his 15-year sentence is excessive. The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is excessive, even if it is within the statutory limits, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Horne, 11-204 (La. App. 5 Cir. 2/14/12), 88 So.3d 562, 569, writ denied, 12-556 (La. 06/01/12), 90 So.3d 437; State v. Nguyen, 06-969 (La. App. 5 Cir. 04/24/07), 958 So.2d 61, 64, writ denied, 07-

1161 (La. 12/07/07), 969 So.2d 628. A sentence is grossly disproportionate if it shocks the sense of justice, when the crime and punishment are considered in light of the harm done to society. State v. Hill, 12-495 (La. App. 5 Cir. 12/18/12), 106 So.3d 1209, 1212; State v. Lawson, 04-334 (La. App. 5 Cir. 09/28/04), 885 So.2d 618, 622, writ denied, 05-0244 (La. 12/09/05), 916 So.2d 1048.

A trial court has vast sentencing discretion in imposing a sentence within statutory limits. State v. Williams, 03-3514 (La. 12/13/04), 893 So.2d 7, 16. A trial judge has broad discretion in sentencing because he has the most familiarity with the aggravating and mitigating circumstances of a particular case. Id.; State v. Wilson, 14-878 (La. App. 5 Cir. 5/28/15), 171 So.3d 356, 367, writ denied sub nom. State v. Wilson, 15-1204 (La. 5/27/16), 192 So.3d 741. An appellate court can review a sentence within statutory limits for constitutional excessiveness. State v. Johnson, 22-300 (La. App. 5 Cir. 8/9/23), 370 So.3d 140, 146.

An appellate court cannot set aside a sentence as excessive absent a manifest abuse of discretion. State v. Williams, 893 So.2d at 16. The relevant question on appeal is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Le, 22-468 (La. App. 5 Cir. 8/9/23), 370 So.3d 162, 172-73, writ denied, 23-1230 (La. 2/6/24), 378 So.3d 752. In considering whether the trial court abused its discretion in sentencing a defendant, a reviewing court should consider 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentences imposed for similar crimes by other courts. State v. Wilson, 171 So.3d at 367.

Defendant asserts his sentence is excessive because although he has been arrested numerous times, he only has one 1999 conviction for "false representation of a CDS." Defendant also argues that the following circumstances should be considered to reduce his sentence: (1) his "altered mental state" at the time of the

offense; (2) the severe injuries he suffered as a result of his actions; (3) his lack of a weapon; and (4) no one was injured other than himself.

Before sentencing, the State read a victim impact statement from Lashekia to the court. Therein, Lashekia expressed that defendant's crime upon her and her family changed her life. She explained she has trouble leaving her house because she re-lives the events of that day every time she walks to her front door. She stated that she did not suffer anxiety before this event, but now she no longer feels safe in her home. The crime has traumatized her. Lashekia fears for her family's lives, and she is scared defendant will send someone to hurt them or try to harm them again when he is released from jail. Lashekia indicated that she warned defendant to stay away, and she never wanted to hurt him. She wrote in her statement that she is in a great deal of pain and cries often. She stated she is working two jobs to save enough money to move away so that she can ensure the safety of her son.

In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion. State v. Hankton, 20-388 (La. App. 5 Cir. 7/3/21), 325 So.3d 616, 623, writ denied, 21-1128 (La. 12/7/21), 328 So.3d 425.

Considering the nature of the crime, we find defendant's actions towards the victims were heinous. Testimony and surveillance video established defendant aggressively and physically grabbed Lashekia on her front lawn, while she was outside with her child. After Lashekia released herself from defendant's grip, defendant is seen on surveillance banging on the car in the driveway of the residence and then following in Lashekia's direction towards her door. Lashekia and Jarmante testified that defendant was banging on the iron door and managed to break it open and knock the knob off the door. Other family members were present in the house, including Lashekia's disabled grandmother. Lashekia's victim impact statement

revealed that she is scared for her and her family's lives after the incident and no longer feels safe in her home.

As to the background of defendant, no information was provided during the sentencing hearing as to defendant's criminal history. Defendant has been convicted of three counts of "false representation of a CDS." In addition, the record shows that at defendant's motion to reduce bond hearing, the State presented an extensive criminal history regarding defendant's numerous arrests dating for over 20 years from 1999 to 2020. In determining a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions, but may properly review all prior criminal activity. State v. Hankton, 20-388 (La. App. 5 Cir. 7/3/21), 325 So.3d 616, 624, writ denied, 21-1128 (La. 12/7/21), 328 So.3d 425.

The third factor requires consideration of sentences imposed for similar crimes in other cases.

In State v. Dillion, 23-453 (La. App. 4 Cir. 11/17/23), 377 So.3d 820, 822, writ denied, 23-1696 (La. 6/5/24), 385 So.3d 1154, a defendant convicted of home invasion received a 25-year sentence. Id. at 822. Defendant forced his way into a 70-year-old woman's home while she was letting her dogs out. Defendant picked up the victim, shoved her on the sofa, and demanded money from her. He threatened to rape and kill her family. At sentencing, the trial judge found the defendant's actions were "quite chilling" and that he was a threat to public safety. Id. at 824. The appellate court found the record supported the 25-year sentence. Id.

Considering the foregoing, we find that the trial did not abuse its discretion by imposing the mid-range 15-year sentence. Defendant was exposed to a sentence of thirty years and a fine of up to five thousand dollars. The record supports defendant's 15-year sentence and indicates that the sentence is not excessive.

**ERRORS PATENT**

We have reviewed the record for errors patent, according to La. C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La. 1975), and State v. Weiland, 556 So.2d 175 (La. App. 5th Cir. 1990). The following matter was discovered.

The record indicates defendant was not properly advised of the period for filing post-conviction relief, as required by La. C.Cr.P. art. 930.8. La. C.Cr.P. art. 930.8 provides that a defendant shall have two years after the judgment of conviction and sentence has become final to seek post-conviction relief. Here, according to the transcript, after sentencing defendant, the trial court made no reference to defendant's right to seek post-conviction relief. Although the sentencing minute entry provides that defendant was advised of the proper prescriptive time period, where there is a discrepancy between the transcript and the minute entry, the transcript generally prevails. State v. Lynch, 441 So.2d 732, 734 (La. 1983).

If a trial court does not properly advise a defendant pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. State v. Becnel, 18-549 (La. App. 5 Cir. 2/6/19), 265 So.3d 1017, 1022.

Accordingly, by way of this opinion, we inform defendant that no application for post-conviction relief, including applications that seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.

**DECREE**

For the foregoing reasons, we affirm defendant's conviction and sentence.

**CONVICTION AND SENTENCE AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 4, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-KA-24

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. LEE V. FAULKNER, JR. (DISTRICT JUDGE)
HOLLI A. HERRLE-CASTILLO          MONIQUE D. NOLAN (APPELLEE)          THOMAS J. BUTLER (APPELLEE)
(APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
ASHTON M. ROBINSON (APPELLEE)
ASSISTANT DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053